UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

NutriQuest, LLC,                         Case No. 0:18-cv-00390-NEB-KMM

     Plaintiff/Counter Defendant,

v.
                                            ORDER

AmeriAsia Imports LLC; Profound
Solutions, Inc.; Ying Li, *also known as*
Olivia Li; Yanbin Shen; Jenna Xu;

     Defendants/Counter Claimants.

---

Dean M. Zimmerli and Dustan J. Cross, Gislason & Hunter LLP, counsel for Plaintiff/Counter Defendant

Paul J. Robbennolt and Lisa B. Ellingson, Winthrop & Weinstine, PA, counsel for Defendants/Counter Claimants

---

       This matter is before the Court on the Defendants and Counterclaim-Plaintiffs' (hereafter "AmeriAsia") Motion for Leave to Amend Counterclaims. Defs.' Mot. to Am., ECF No. 154. In addition to AmeriAsia's existing counterclaims for a declaration of noninfringement and invalidity of NutriQuest, LLC's '774 Patent, AmeriAsia seeks to add the following counterclaims: (1) tortious interference with existing contracts; (2) tortious interference with prospective contractual relationships; (3) Lanham Act; (4) Minnesota Deceptive Trade Practices Act; (5) unfair competition; and (6) wrongful issuance of temporary restraining order. Proposed First Am. Countercl. ("Proposed Am. Countercl."), ECF No. 161. For the reasons that follow, the motion to amend is granted in part and denied in part.

### Allegations Relating to Proposed Amended Counterclaims

The factual basis for AmeriAsia's proposed addition of five counterclaims is set forth in the Proposed First Amended Counterclaims, which the Court summarizes below. NutriQuest holds a patent (the "'774 Patent") for an animal-feed formula that uses an ingredient that NutriQuest is required to keep secret by certain agreements.[1] AmeriAsia and NutriQuest are competitors in the markets to purchase that ingredient. NutriQuest sued AmeriAsia in a state court lawsuit on October 10, 2017 for tortious interference with NutriQuest's exclusive agreements for supply of the ingredient. NutriQuest sought an *ex parte* temporary restraining order preventing AmeriAsia from obtaining and disposing of the ingredient in various ways, and Rice County District Court Judge John Cajacob issued the TRO on October 26, 2017. On January 11, 2018, AmeriAsia sought a declaratory judgment of noninfringement and invalidity of the NutriQuest's '774 Patent. AmeriAsia then removed the case to federal court. On June 6, 2018, NutriQuest amended its pleadings to add claims alleging that AmeriAsia infringes the '774 Patent.

AmeriAsia alleges that in August of 2017, it reached an agreement to supply Provimi North America with the ingredient used in the animal-feed formula. However, in October 2017, NutriQuest contacted Provimi to discuss AmeriAsia's purchase and sale of the ingredient. NutriQuest learned around the same time that AmeriAsia had the contract to supply the ingredient to Provimi. AmeriAsia asserts that between October and November 2017, NutriQuest falsely and misleadingly represented to Provimi that AmeriAsia tortiously interfered with NutriQuest's exclusive agreements and infringed the '774 Patent, even though NutriQuest knew that no such findings were made. In doing so, NutriQuest allegedly intended to harm AmeriAsia and its business and intended to procure the breach of its contract with Provimi.

---

[1] The secrecy of the ingredient explains the filing under seal of numerous documents in this litigation.

AmeriAsia asserts that it had ongoing business relationships and a reasonable expectancy of entering business relationships with other suppliers of the ingredient. NutriQuest allegedly knew of those relationships and expectancies and intentionally engaged in wrongful acts and unjustified interference with those relationships and expectancies by falsely communicating that the '774 Patent gives NutriQuest the exclusive right to purchase the ingredient worldwide. Specifically, on December 13, 2017, a NutriQuest agent emailed a supplier of the ingredient in Indonesia and "falsely claimed that shipment from Indonesia of a container of [the ingredient] had broken the law, because NutriQuest has a patent in the United States." AmeriAsia identifies three other suppliers to which the same alleged falsehoods were asserted. According to AmeriAsia, this demonstrated a reckless disregard for the truth because NutriQuest knew the '774 Patent does not cover purchase or shipment of the ingredient from and that it has no force of law in Indonesia.

NutriQuest also purportedly contacted additional third parties and misleadingly asserted that: (1) AmeriAsia infringes the '774 Patent; (2) AmeriAsia tortiously interfered with NutriQuest's exclusive supply agreements; and (3) falsely represented that AmeriAsia has an association with NutriQuest. In particular, AmeriAsia asserts that on December 7, 2017, NutriQuest sent a letter to an identified AmeriAsia customer including these three misrepresentations. In NutriQuest's letter, it accuses AmeriAsia of attempting to interfere with NutriQuest's exclusive supply agreements and importing the ingredient. NutriQuest's letter states that AmeriAsia is trying to sell the ingredient to swine producers with instructions for how to formulate feed in the manner described by the '774 Patent. NutriQuest's letter to AmeriAsia's customer also allegedly falsely states that Defendant Yanbin Shen had misrepresented that AmeriAsia and NutriQuest were associated so that suppliers would do business with AmeriAsia instead of NutriQuest. AmeriAsia contends that NutriQuest knew at the time it sent this letter that its Rice County District Court complaint did not have any claims for patent infringement, did not

bring patent-infringement claims after AmeriAsia sought declaratory relief of non-infringement and invalidity, and only added patent-infringement claims in June of 2018,suggesting it had no belief in the merits of its assertion that AmeriAsia was infringing its patents.

Finally, AmeriAsia claims that "[t]he ex parte TRO was wrongfully issued by the Rice County Court." AmeriAsia purchased some of the ingredient prior to the existence of any of NutriQuest's exclusive supplier agreements. Therefore, AmeriAsia claims that it always had the legal right to move, transport, sell, use, secret, conceal, hide, and dispose of the ingredient it purchased prior to issuance of the TRO. The TRO prevented AmeriAsia from taking any of those actions. It also alleges that the TRO expired on February 23, 2018.

### Futility Standard

NutriQuest argues that AmeriAsia's motion for leave to amend its counterclaims should be denied because allowing amendment would be futile.[2] Pl.'s Mem. in Opp'n to Mot. to Am. Countercl. ("Pl.'s Mem."), ECF No. 168. Though leave to amend should be freely granted when justice requires, Fed. R. Civ. P. 15(a)(2), "[f]utility is a valid basis for denying leave to amend." *U.S. ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005). When a party challenges a motion to amend a pleading for futility, that challenge is successful where the proposed "claims created ... would not withstand a motion to dismiss for failure to state a claim upon which relief can be granted." *Hanson v. M&I Marshall and Ilsley Bank*, 737 F. Supp. 2d 988, 990 (D. Minn. 2010); *see also In re Senior Cottages of Am., LLC.*, 482 F.3d 997, 1001 (8th Cir. 2007) (citations omitted) ("[W]hen a court denies leave to amend on the ground of futility, it

---

[2] A court may also refuse to grant leave to amend for undue delay, bad faith on the part of the moving party, or unfair prejudice to the opposing party. *See Sanders v. Clemco Indus.*, 823 F.2d 213, 216 (8th Cir. 1987) (listing additional reasons for denying a motion to amend). NutriQuest does not claim that any of these other reasons for denying a motion to amend apply in this case, and the Court will not address them here.

4

means that the court reached a legal conclusion that the amended complaint could not withstand a [motion to dismiss]...."). This requires a court to consider the standard applicable to a motion to dismiss pursuant to Rule 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3]

### *Noerr-Pennington* Doctrine

NutriQuest first argues that all of AmeriAsia's proposed amended counterclaims are futile because they are barred by the *Noerr-Pennington* doctrine.[4] *Noerr-Pennington* immunity exists to protect a person's First Amendment right to petition the government through litigation and includes actions reasonably and normally attendant to effective petitioning. *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, 164 F. Supp. 3d 1117, 1130–31 (D. Minn. 2016). "Generally, under the doctrine, the act of filing a lawsuit is viewed as a form of petitioning activity and is therefore immune from antitrust liability." *Id.* at 1130. The doctrine can also bar claims that are based on a

---

[3] AmeriAsia suggests that the futility standard is more lenient than the standard applicable to a Rule 12(b)(6) motion. Defs.' Mem. in Supp. of Mot. to Am. Countercl. at 4 (citing *Fagen, Inc. v. Exergy Dev. Grp. of Idaho, L.L.C.*, No. 12-cv-2703 (MJD/SER), 2014 WL 12648452, at *7 (D. Minn. June 12, 2014), ECF No. 156.) The Eighth Circuit case law recognizes no such distinction. *See, e.g., Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (equating futility challenge to a Rule 12(b)(6) analysis and citing *Iqbal*, 556 U.S. at 678).

[4] The *Noerr-Pennington* doctrine gets its name from two Supreme Court cases: *E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).

litigant's conduct prior to filing suit, such as sending demand letters. *Select Comfort v. Sleep Better Store, LLC*, 838 F. Supp. 2d 889, 896 (D. Minn. 2012).

Relying on the decision in *Select Comfort*, NutriQuest argues that AmeriAsia's counterclaims are based on NutriQuest's pre-suit assertion of its rights under the '774 Patent and its exclusive supply agreements. NutriQuest asserts that such conduct is reasonably and normally attendant to protected litigation activity, making its alleged conduct immune under the *Noerr-Pennington* doctrine. Pl.'s Mem. at 3-8; *id.* at 6 ("This case is actually strikingly similar to the *Select Comfort* case cited above."). Unfortunately for NutriQuest, *Select Comfort* is distinguishable and the doctrine does not preclude AmeriAsia's proposed claims.

In *Select Comfort*, the plaintiff, a company that manufactured beds, sent a pre-suit demand letter to Overstock.com, an online retailer, alleging that Overstock was advertising and selling beds that infringed Select Comfort's "Sleep Number" trademark. The allegedly infringing beds were manufactured by Sleep Better. After it received Select Comfort's letter, Overstock stopped using an allegedly infringing "Number Air Mattress" or "Number Bed" phrase on its website and removed Sleep Better's beds from sale on the website. 838 F. Supp. 2d at 891. When Select Comfort sued Sleep Better for infringement, Sleep Better asserted counterclaims for tortious interference with the contract between Sleep Better and Overstock based on the pre-suit demand letter. *Id.* The court granted Select Comfort's motion to dismiss the counterclaims, ruling in relevant part that the *Noerr-Pennington* doctrine immunized Select Comfort from the tort claims at issue. *Id.* at 897-900.

Unlike the defendant's counterclaims in *Select Comfort*, AmeriAsia's are not based on any pre-suit demand letter from or threat of litigation by NutriQuest. There are three specifically identified contacts between NutriQuest and third parties described in the proposed amended counterclaims: (1) NutriQuest's allegedly false assertion to Provimi that AmeriAsia was

violating the '774 Patent; (2) assertions by a NutriQuest agent to a third party on December 13, 2017 that NutriQuest had worldwide exclusivity for the ingredient as a result of the '774 Patent;[5] and (3) the December 7, 2017 communication from NutriQuest to a third party, which allegedly falsely accused AmeriAsia of infringing the patent, tortiously interfering with NutriQuest's customers, and misrepresenting an affiliation between AmeriAsia and NutriQuest. But AmeriAsia does not allege that NutriQuest threatened to pursue legal remedies against any of these third parties. Rather, AmeriAsia alleges that NutriQuest made false and misleading statements about AmeriAsia's conduct that were anticompetitive and caused breaches of AmeriAsia's existing and prospective contractual relationships.

NutriQuest suggests that the alleged communications are still immune because they implied that the third parties' conduct would violate NutriQuest's rights. Pl.'s Mem. at 7. And at the hearing, NutriQuest explained that the alleged statements did not include direct threats of litigation because NutriQuest is trying to maintain positive business relationships with its customers. However, NutriQuest provides no support that implications, as opposed to direct threats or assertions, are reasonably attendant to effective petitioning activity. Indeed, the case law suggests such conduct falls outside the "purview of *Noerr-Pennington*." *Inline Packaging*, 164 F. Supp. 3d. at 1132. "Alleged actions against third parties who were not directly threatened with litigation are seemingly unrelated to [the plaintiff's] ability to petition a court for redress for [the defendant's] wrongdoing." *Id.* NutriQuest has not cited any cases extending the application of *Noerr-Pennington* immunity to "scenarios where those receiving

---

[5] NutriQuest argues that whatever the purported agent's statements may have been, those communications cannot be attributed to NutriQuest because a contract between NutriQuest and the individual's company labels her an independent contractor and not an agent. Pl.'s Mem. at 10 n.1. This argument may ultimately be fodder for summary judgment, but whether this individual's statements can bind the company should not be resolved at this early stage of the proceedings based solely on the label selected in that agreement.

7

the communications were third parties not directly threatened with litigation." *Id.* In sum, the *Noerr-Pennington* doctrine does not render the proposed counterclaims futile.

### Fed. R. Civ. P. 9(b)

Second, NutriQuest argues that AmeriAsia has failed to plead certain of its claims with the particularity required by Fed. R. Civ. P. 9(b). Although NutriQuest recognizes that none of AmeriAsia's proposed counterclaims are labeled as "fraud" claims to which Rule 9(b) specifically applies, NutriQuest asserts that the proposed counterclaims are premised on false representations, and as such, they should be required to comply with Rule 9(b)'s stricter pleading standard. Pl.'s Mem. at 8–11. At the hearing, NutriQuest argued that Rule 9(b) should be applied to the claims asserted in proposed counterclaims Counts III through VIII. AmeriAsia suggests that Rule 9(b) applies to a smaller subset of claims, but argues that its proposed amended counterclaims are alleged with sufficient particularity to satisfy the standard. Defs.' Mem. in Supp. of Mot. to Am. Countercl. ("Defs.' Mem.") at 4–6, ECF No. 171.

Rule 9(b) requires that a party plead circumstances constituting fraud with particularity. Fed. R. Civ. P. 9(b). This rule must be interpreted "in harmony with the principles of notice pleading," so that a pleading must identify "such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Schaller Tel Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (citations omitted).

Assuming that Rule 9(b) applies to at least some of AmeriAsia's proposed counterclaims, the Court concludes that the specific allegations of false representations are alleged with the particularity required by the Rule. Each of the "Counts" setting forth various claims incorporates all of the other allegations in AmeriAsia's proposed amended pleading, Proposed Am. Countercl. ¶¶ 62, 72, 92, and the Court reads the pleading as a whole when determining whether its

allegations suffice. As noted above, the proposed pleading specifically identifies three allegedly false representations made by Nutriquest: (1) allegedly false representations of fact to Provimi in October and November of 2017;[6] (2) the alleged agent's December 13, 2017 statements to PT. Fuluso Kencana International; and (3) the December 7, 2017 letter from NutriQuest to one of AmeriAsia's customers. With respect to these allegations, the proposed counterclaims are sufficiently particular to give NutriQuest the equivalent of the information found in "the first paragraph of a newspaper story," *see Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550–51 (8th Cir. 1997), and allows NutriQuest "to respond specifically and quickly to the potentially damaging allegations," *see Schaller*, 298 F.3d at 746. Accordingly, the Court finds that the proposed counterclaims are not futile.

However, the Court notes that AmeriAsia has indicated that the Lanham Act and MDTPA claims are premised upon "numerous" false or misleading statements of fact attributable to NutriQuest. *See* Proposed Am. Countercl. ¶¶ 64–66, 74–76. If AmeriAsia's claims are broader than the specific circumstances identified in its proposed amended pleading, then it will be necessary for AmeriAsia, as soon as possible, to disclose more detailed information about any additional false representations of which it is aware. Moreover, NutriQuest has designated certain material in this litigation "Confidential–Attorney's Eyes Only," and includes portions of those materials in its proposed counterclaims. The Court does not address the issues implicated by

---

[6] NutriQuest indicates that the allegations concerning NutriQuest's representations to Provimi do not identify who made the statements. and AmeriAsia makes several allegations on information and belief. Pl.'s Mem. at 9–10. The Court is not persuaded that NutriQuest is unable to respond to the allegations concerning Provimi. NutriQuest either is aware, or soon can be, about who, if anyone, spoke to Provimi about AmeriAsia during the timeframe identified. Thus, NutriQuest is able to adequately defend itself against AmeriAsia's allegations.

9

that decision at this time. That is apparently the subject of a forthcoming motion for which AmeriAsia has reserved a hearing date later this month.

### Lanham Act Counterclaim

Third, NutriQuest argues that AmeriAsia's Lanham Act claims are futile because they fail to allege that NutriQuest misused any trademark or other protected mark. Pl.'s Mem. at 11–13. According to NutriQuest, any Lanham Act claim requires allegations that the party to be held liable used a protected mark or an imitation of such a mark in interstate commerce. *Id.*

Section 43(a) of the Lanham Act provides, in relevant part, as follows:

> Any person who ... in connection with any goods or services ... uses in commerce ... any ... false or misleading description of fact, or false or misleading representation of fact, which ...
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). "Subsection (a)(1)(A) is referred to as the false endorsement prohibition; subsection (a)(1)(B) is referred to as the false advertising prohibition." *Am. Ass'n of Orthodontists v. Yellow Book USA, Inc.*, 434 F.3d 1100, 1102 (8th Cir. 2006).

Although not entirely clear, AmeriAsia's proposed amended Lanham Act counterclaim appears to rely on the false endorsement prohibition in

subsection (a)(1)(A). AmeriAsia indicates that its Lanham Act claim is for "unfair competition" and is brought under 15 U.S.C. § 1125(A)." The allegations in its Lanham Act "Count" generally track subsection (a)(1)(A)'s language, but AmeriAsia's factual allegations fail to allege that NutriQuest is engaged in any conduct that would amount to false endorsement. AmeriAsia does not allege that NutriQuest is making false representations that are likely to cause consumers confusion, or to mistake, or to be deceived that there is an "affiliation, connection, or association" between NutriQuest and AmeriAsia. Nor does AmeriAsia allege any facts suggesting that NutriQuest has made a false representation which is likely to cause confusion or a mistake, or to deceive as to the origin, sponsorship, or approval of NutriQuest's goods, services, or commercial activities by AmeriAsia. Finally, although AmeriAsia's proposed pleading says that it is pursuing an "unfair competition" claim under the Lanham Act, it does not cite any Eighth Circuit or Supreme Court case recognizing a freestanding claim independent of the false endorsement of § 1125(a)(1)(A) or the false advertising provisions of § 1125(a)(1)(B).

In support of its argument that AmeriAsia's Lanham Act claim is futile because AmeriAsia fails to allege misuse of a protected mark, NutriQuest relies on *DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 936 (8th Cir. 2003). In *DaimlerChrysler*, the plaintiff asserted Lanham Act claims under several provisions of the statute, including the false-endorsement provision found at § 1125(a)(1)(A). The Eighth Circuit stated that "[e]ach provision [of the Lanham Act relied on by the plaintiff] requires, as a prerequisite to finding liability, that the defendant 'use in commerce' the protected mark or a colorable imitation thereof." *Id.*

In the face of this Eighth Circuit precedent, AmeriAsia relies mainly on out-of-circuit precedent and does nothing to distinguish *DaimlerChrysler*. However, neither *DaimlerChrysler* itself nor NutriQuest explains whether the requirement of use of a mark has any applicability to a false advertising claim under § 1125(a)(1)(B).

Indeed, some cases suggest that a false advertising claim under subsection (a)(1)(B) may be viable without any allegations that the opposing party misused a protected mark. *See, e.g., Insignia Systems, Inc. v. News America Marketing In-Store, Inc.*, No. 04-cv-4213 (JRT/AJB), 2007 WL 2893374, at *6 (D. Minn. Sept. 28, 2007); *Blue Rhino Global Sourcing, Inc.*, 888 F. Supp. 2d 718, 722–23 (M.D.N.C. 2012). However, AmeriAsia has not included language or any other indication in its proposed amended counterclaim that plainly indicates it intends to pursue a false advertising claim. Its allegations suggest that may be a possibility (especially considering how little the factual allegations have to do with false endorsement), but it doesn't refer to the false advertising subsection or track its language in its proposed amended pleading, doesn't clearly reference it in its briefing, and does not argue that its proposed pleading plausibly sets forth the elements of such a claim. The Court will not assume that AmeriAsia intends to bring such a claim under these circumstances.

Based on this record, the Court denies AmeriAsia's motion for leave to amend its counterclaims with its Lanham Act claim. However, the Court will allow AmeriAsia an additional opportunity to clarify its proposed amended Lanham Act counterclaim. AmeriAsia may prepare a Proposed Second Amended Counterclaims, and if NutriQuest is unwilling to consent to that proposed pleading, AmeriAsia may renew its motion for leave to amend with respect to that claim.

### No Cause of Action for Wrongful Issuance of TRO

Finally, NutriQuest contends that there is no cause of action for the wrongful issuance of a temporary restraining order. Pl.'s Mem. at 13–14. Rule 65 permits a district court to "issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Minnesota's rules likewise required NutriQuest to post such a bond when it sought a TRO in

state court. Minn. R. Civ. P. 65.03(a). Both the federal and Minnesota rules provide that "[t]he surety's liability may be enforced on motion without … an independent action." Fed. R. Civ. P. 65.1; Minn. R. Civ. P. 65.03(b).

Both parties seem to agree that AmeriAsia may recover against the bond if it is determined that the TRO was wrongfully issued regardless of whether that relief is part of a separate claim or a motion under Fed. R. Civ. P. 65.1. NutriQuest does not point the Court to any caselaw directly addressing whether a district court is required to dismiss a wrongful-TRO claim that is raised independently as opposed to through a Rule 65.1 motion. Neither party has directed the Court to authority answering the question whether a party may add a freestanding claim for wrongful issuance of a TRO to a pleading raising other claims.[7] Given the absence of clearly applicable caselaw requiring such a claim to be dismissed, the Court will not conclude that AmeriAsia is foreclosed from amending its counterclaims to assert its wrongful-TRO claim at this time.

## ORDER

For all the foregoing reasons, **IT IS HEREBY ORDERED THAT** Defendants' Motion for Leave to Amend Counterclaims, ECF No. 154, is **GRANTED IN PART** and **DENIED IN PART**. The motion is denied only with respect to AmeriAsia's proposed Lanham Act claim. Otherwise the motion is granted. Within 14 days of the date of this Order, AmeriAsia may prepare a Proposed Second Amended Counterclaims with respect to its Lanham Act counterclaims and circulate it to counsel for NutriQuest. If NutriQuest does not consent to the filing of that

---

[7] AmeriAsia cites *Total Safety v. Rowland*, No. 13-cv-6109, 2014 WL 6485461, at *8 (E.D. La. Nov. 18, 2014), a decision in which a federal district court denied a plaintiff's motion to dismiss a defendant's wrongful-TRO counterclaim, concluding that the defendant stated "a claim for damages and attorney fees incurred in defending a wrongfully issued TRO." This decision largely implicates Louisiana state rules, and AmeriAsia does not explain precisely how that decision applies in this context.

proposed amended pleading, AmeriAsia may file a renewed motion for leave to amend, which the Court will resolve based on the written submissions alone.

Date: October 17, 2018    *s/ Katherine Menendez*
                          Katherine Menendez
                          United States Magistrate Judge