UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

NutriQuest, LLC,

    Plaintiff/Counter Defendant,

v.

AmeriAsia Imports LLC; Profound Solutions, Inc.; Ying Li, *also known as* Olivia Li; Yanbin Shen; Jenna Xu;

    Defendants/Counter Claimants.

Case No. 0:18-cv-00390-NEB-KMM

REPORT AND RECOMMENDATION

---

Dean M. Zimmerli and Dustan J. Cross, Gislason & Hunter LLP, counsel for Plaintiff/Counter Defendant

Paul J. Robbennolt and Lisa B. Ellingson, Winthrop & Weinstine, PA, counsel for Defendants/Counter Claimants

---

    This matter is before the Court on Plaintiff NutriQuest LLC's Motion for Order Holding Defendants in Contempt. (Pl.'s Mot., ECF No. 128.) NutriQuest asserts that Defendants AmeriAsia Imports LLC, Ying Li, Yanbin Shen, Profound Solutions, Inc., and Jenna Xu (collectively "AmeriAsia"), violated the terms of a December 1, 2017 Order Modifying Temporary Restraining Order issued prior to this case's removal to federal court by Rice County District Court Judge John Cajacob. NutriQuest asks the Court to sanction AmeriAsia by requiring payment of NutriQuest's cost in bringing the motion for contempt, including all attorney's fees, along with other appropriate sanctions. (Pl.'s Mot. ¶ 2.) For the reasons that follow, the Court recommends that the motion for contempt be denied.

I.  Factual Background

NutriQuest originally file this lawsuit in Rice County District Court on October 20, 2017. [Compl., ECF No. 2.] NutriQuest also filed a motion for a temporary restraining order alleging that AmeriAsia was interfering with NutriQuest's exclusive supply contracts between NutriQuest and certain suppliers of an ingredient used in a patented animal-feed formula. [*See* Ex Parte Application for TRO, ECF No. 26; Pl.'s Mem. in Supp. of Ex Parte Application for TRO, ECF No. 16; Aff. of Dean Zimmerli, ECF No. 18; Aff. of Ryan Cooney, ECF No. 21.] On October 26, 2017, Judge Cajacob made preliminary findings and issued a "Temporary Restraining Order." [Oct. 26 TRO, ECF No. 4.] Based on NutriQuest's ex parte showing, Judge Cajacob restrained AmeriAsia from:

a. moving, transporting, selling, using, secreting, concealing, hiding, or disposing of [the ingredient] purchased by or at the direction of [AmeriAsia], including, without limitation, any [of the ingredient] stored in warehouses owned by Lonsdale Packaging, Inc.; and

b. purchasing or attempting to purchase any [of the ingredient] from any person or entity that is under contract to supply [the ingredient] to NutriQuest, LLC, or any person acting on NutriQuest's behalf, including, without limitation, C.V. Bungakembang Enterprise and PT Indo Prima Sentosa.

[*Id.* at 5.] Finally, Judge Cajacob scheduled a hearing on NutriQuest's motion for a preliminary[1] injunction for November 9, 2017. [*Id.*]

Judge Cajacob held hearings on NutriQuest's motion for a preliminary injunction on November 9, 2017 and November 30, 2017. (*See* Dec. 1, 2017 Order Modifying TRO at 1 ("December 1st Order"), ECF No. 12; 11/9 Tr., ECF No. 143; Tr. of Nov. 30 Hr'g ("11/30 Tr."), ECF No. 144.) At the end of the

---

[1]  The TRO mistakenly referred to the hearing as one for a permanent injunction, but this was due to a mistake in NutriQuest's application. (Tr. of Nov. 9, 2017 Hr'g ("11/9 Tr.") at 3:8–4:3, ECF No. 143.)

November 9th hearing, Judge Cajacob noted that he would have to continue the hearing to another date. (11/9 Tr. at 105:17–20.) Judge Cajacob concluded the hearing by indicating that the "temporary or ex-parte restraining order will continue until our next hearing." (*Id.* at 107:5–7.) The court resumed the hearing on November 30, 2017 to hear additional testimony. (11/30 Tr.) After hearing from the final witness, Judge Cajacob asked whether the parties wanted to make oral argument and NutriQuest requested an additional week to submit a post-hearing memorandum. (11/30 Tr. at 39:14–21.) Judge Cajacob informed the parties that he was lifting the TRO with respect to one of the four or five containers of the ingredient that AmeriAsia had in storage, recognizing that the TRO was an extraordinary remedy granted without AmeriAsia having a chance to address it. (*Id.* at 45:20–46:15.) The day after the November 30, 2017 hearing, Judge Cajacob issued an "Order Modifying Temporary Restraining Order" that dissolved the TRO with respect to one full container load of the ingredient. (December 1st Order.) The court further provided that "[t]he remaining provisions of the TRO remain in effect until further Order of this Court." (*Id.* at 3.)

On December 8, 2017, AmeriAsia and NutriQuest filed briefs addressing NutriQuest's motion for a preliminary injunction. (Pl.'s Mem. in Supp. of Mot. for Temporary Injunction, ECF No. 41; Defs.' Mem. in Opp'n to Pl.'s Mot. for Injunctive Relief, ECF No. 37.) On January 11, 2018, AmeriAsia filed an amended answer and counterclaims, which asserted claims for relief arising under United States patent laws. (Am. Answer and Countercl., ECF No. 10.) On January 25, 2018, with the TRO remaining in effect because an order on the request for a preliminary injunction had not yet been issued, AmeriAsia asked Judge Cajacob to increase NutriQuest's bond requirement. (Defs.' Mem. in Supp. of Mot. to Amend TRO Bond Requirement, ECF No. 47.)

On February 9, 2018, before Judge Cajacob issued any ruling on the NutriQuest's motion for a preliminary injunction or on the requested bond increase, AmeriAsia removed the case to federal court. (Notice of Removal, ECF

3

No. 1.) In a February 26, 2018 letter to NutriQuest, AmeriAsia took the position that the TRO, as modified by the December 1, 2017 Order, had expired 14 days after removal pursuant to Federal Rule of Civil Procedure 65(b)(2). (Decl. of Lisa Ellingson, Ex. C, ECF No. 142-1.) The following day, NutriQuest responded, informing AmeriAsia that it disagreed with the position that the TRO had expired. (*Id.*, Ex. D.) Neither party sought a ruling on the issue with this Court.

Several months later, on June 26, 2018, NutriQuest inquired whether AmeriAsia had purchased, imported, or sold any of the ingredient. (Letter from D. Cross to P. Robbennolt and L. Ellingson (June 26, 2018), ECF No. 134.) AmeriAsia confirmed that after February 23, 2018, AmeriAsia moved and sold the ingredient. (Letter from L. Ellingson to D. Cross (July 2, 2018), ECF No. 135.) AmeriAsia confirmed in a letter to the Court that its first sale of the product occurred on May 21, 2018. (Letter from Ellingson, L., to Menendez, M.J. (Oct 4, 2018) (on file with the Court).) On July 23, 2018, NutriQuest brought its motion for contempt. (Pl.'s Mot.)

## II.   Legal Standard

This case involves the intersection of a statue that preserves the application of state court orders after removal and a Federal Rule of Civil Procedure governing the automatic expiration of temporary restraining orders. Pursuant to 28 U.S.C. § 1450, when a civil case is removed from a state court to a federal district court, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." However, the Federal Rules of Civil Procedure provide that a temporary restraining order "issued without notice … expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Fed. R. Civ. P. 65(b)(2).

Confronted with the interplay between these two provisions, the Supreme Court explained that Section 1450 was not "intended to turn ex parte state court

4

temporary restraining orders of limited duration into federal court injunctions of unlimited duration." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 10 of Alameda County*, 415 U.S. 423, 435 (1974). The Court held:

> An ex parte temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal.

*Id.* at 439–40.

### III.  Analysis

The issue in this case is whether Judge Cajacob's December 1st Order is the type of "ex parte temporary restraining order issued by a state court prior to removal" that expires automatically within 14 days after the case is removed, or whether it is an injunction that remains in effect indefinitely despite removal. NutriQuest argues that the December 1st Order would not automatically expire based on the rule in *Granny Goose* because that rule only applies to orders issued without notice. Instead, NutriQuest contends, the December 1st Order was issued only after AmeriAsia received notice, appeared for two separate days of hearing, and even submitted a proposed order that the state court adopted. Functionally, NutriQuest insists that Judge Cajacob's amendment of the order converted the ex parte TRO into a preliminary injunction. In contrast, AmeriAsia argues that the December 1st Order merely modified an earlier ex parte TRO and, as such, it expired pursuant Rule 65(b)(2) on February 23, 2018.

*Granny Goose* does not answer the essential question facing the Court here. In *Granny Goose*, the plaintiff obtained an ex parte temporary restraining order from the state court; the state court set a hearing on a motion for preliminary injunction; and then before the scheduled hearing could occur, the defendants removed the proceeding to federal court. *See* 415 U.S. at 427–28

5

(describing the procedural history of the case). When AmeriAsia removed this case to state court, the posture was similar in some ways. Like the plaintiff in *Granny Goose*, NutriQuest obtained an ex parte TRO without notice and the state court scheduled a hearing on a motion for a preliminary injunction. And in both cases, the defendant was on notice of the existence of the TRO and of further proceedings related to a preliminary injunction. However, in this case, before the case was removed, AmeriAsia appeared at two state court evidentiary hearings, and the state court extended the duration of the TRO until such time as an order could be issued on the motion for a preliminary injunction. *Granny Goose* does not tell us whether these differences change the December 1st Order into an injunction that is not subject to Rule 65(b)'s time limits for TROs or if it remained the type of state court order that expires, at the latest, 14 days after removal. For several reasons, the Court concludes that the December 1st Order expired 14 days after removal and the motion for contempt should be denied.

First, the Court disagrees with NutriQuest's suggestion that the only orders that expire after removal are those which where entirely ex parte, and because AmeriAsia had engaged in the litigation in state court, the Rule 65(b)'s time limit does not apply. The closest persuasive authority identified by the parties and the Court's own research indicates that Rule 65(b)'s time limits apply even where a defendant received pre-removal notice and appeared in the state court proceedings. In one such case, a federal district court concluded that a pre-removal state TRO automatically expired pursuant to Rule 65 despite the fact that "the TRO ... was not issued *ex parte*; the [defendant] was present at the hearing before [the state court judge]." *See Carrabus v. Schneider*, 111 F. Supp. 2d 204, 206 n.2, 210–11 (E.D.N.Y. 2000) (concluding that the defendants' motion to vacate a state court TRO was moot based on the automatic-expiration provision in Rule 65(b) where the TRO was granted following an initial hearing at which an attorney for the defendants appeared and made a presentation on the merits). The *Carrabus* court explained that "there is no reason to believe that a

state court TRO issued on notice, and in anticipation of a preliminary injunction hearing, is exempt upon removal to the federal forum from the Rule 65 time limitation that clearly does govern an *ex parte* TRO in the same circumstances." *Id.* (citing *Granny Goose*, 415 U.S. at 438–39). Other courts reach similar conclusions. *See, e.g., Rural Media Gr., Inc. v. Performance One Media, LLC*, No. 8:09-cv-447, 2010 WL 273979, at *2–3 (D. Neb. Jan. 13, 2010) (relying on *Granny Goose*, 415 U.S. at 439–40, and finding that a TRO issued in state court could not remain in force beyond the time limit set in Rule 65(b) where defendant had notice of the application and appeared at a hearing to determine whether a preliminary injunction should issue shortly before removal); *Western Convenience Stores, Inc. v. Burger King, Corp.*, No. 8:07-cv-270, 2007 WL 2682245, at *1, 3 (D. Neb. Sept. 7, 2007) (concluding that an ex parte state court TRO expired automatically pursuant to Rule 65(b) even where the defendant's own motion to dissolve the TRO was heard and denied by the state court prior to the defendant's removal of the case to federal court). These cases are not inconsistent with the Supreme Court's observation in *Granny Goose* that "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal." 415 U.S. at 437. Based on these cases, the Court concludes that the December 1st Order restraining AmeriAsia expired pursuant to the time limits in Rule 65(b), despite the fact that AmeriAsia received notice and appeared in the state court hearings prior to removal.

Second, the Court disagrees that the December 1st Order amending the ex parte TRO somehow converted that TRO into a preliminary injunction. Certainly, the name found in the caption of the December 1st Order does not control the analysis, but NutriQuest's suggestion that the TRO became a de facto preliminary injunction simply does not withstand scrutiny. The record conclusively shows that the December 1st Order did not take on the characteristics of a preliminary injunction. When he issued the December 1st Order, Judge Cajacob made no new written findings of fact or conclusions of

7

law—such as whether NutriQuest had met its burden to show a likelihood of success on the merits—based on the evidentiary record that was developed at the November 9th and 30th hearings. The court took NutriQuest's application for preliminary injunction under advisement and permitted the parties to submit supplemental post-hearing briefing. Even Judge Cajacob's comments during the November 30th hearing—*i.e.*, that he had provided and was extending an extraordinary remedy issued ex parte (11/30 Tr. at 44:20–45:15)—reinforce this conclusion. In short, the record clearly shows that the state court merely extended the duration of the TRO that was originally issued ex parte and slightly modified its scope until a decision could be reached on whether a preliminary injunction was warranted.[2] To conclude otherwise would ignore the clear indications that Judge Cajacob was going to either grant or deny a preliminary injunction, but that he had not done so at the time of removal.

Finally, despite knowing that the state court had never ruled on its pre-removal request for a preliminary injunction, NutriQuest chose not to renew that motion after the case was in federal court. NutriQuest made that choice despite a clear indication in the record that: "any motion previously filed in state court must be refiled in compliance with the Federal Rules of Civil Procedure and the Local Rules of this District."[3] (Text Only Entry (Feb. 9, 2018), ECF No. 28.)

---

[2]   Minnesota Rule of Civil Procedure 65.01, which the state court applied in determining whether to grant the ex parte TRO, does not include a time limitation comparable to Fed. R. Civ. P. 65(b)(2). Instead, the Minnesota Rule provides that after issuing an ex parte TRO, the state court must set a hearing on an application for a temporary injunction as soon as practicable, and the party who obtained the ex parte TRO must proceed with the application at that hearing, or else the state court will dissolve it. Of course, NutriQuest proceeded with its application for a preliminary injunction in the state court, but the December 1st Order did not grant that application. Judge Cajacob merely extended the earlier TRO to maintain the status quo until he could get out a ruling.

[3]   This same text entry on the docket indicates that "Orders entered by the state court prior to removal remain in effect," (ECF No. 28), but as the Court

NutriQuest also made that choice despite AmeriAsia's February 26, 2018 letter asserting that the December 1st Order expired automatically 14 days after removal. NutriQuest knew AmeriAsia took such a position, knew that its motion for a preliminary injunction had never been adjudicated by the state court, and knew that this Court required previously filed state court motions to be refiled. With that knowledge, NutriQuest's request for an order holding AmeriAsia in contempt of court for selling the ingredient when it did rings hollow.

## IV. Recommendation

For the foregoing reasons, **IT IS HEREBY RECOMMENDED THAT** NutriQuest's Motion for Order Holding Defendants in Contempt **(ECF No. 128)** should be **DENIED**.

Date: October 17, 2018         *s/Katherine Menendez*
                               Katherine Menendez
                               United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

---

explained above, an ex parte TRO that is extended by a state court prior to removal is still subject to automatic expiration after 14 days pursuant to Fed. R. Civ. P. 65(b)(2).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.